United States District Court
Southern District of Texas

**ENTERED**

December 03, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT             SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Reginald T. Hollins, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | Civil Action H-19-4555 |
| Bobby Lumpkin, | § | |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
| Respondent. | § | |

# Report and Recommendation

Reginald T. Hollins is serving life in prison for aggravated robbery. Hollins filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. (D.E. 1.) Bobby Lumpkin has moved for summary judgment. (D.E. 17.) The court recommends that Lumpkin's motion for summary judgment be granted and Hollins's petition be denied with prejudice.

## 1. Facts and Proceedings in State Court

On February 19, 2011, two masked men robbed an Auto Zone in Houston, Texas. When police arrived on scene minutes later, a witness flagged officers down and told them that two African American men in a black Impala with rims left the store heading northbound on Seaford. (D.E. 16-6 at 10–11, 16.) Less than one minute later, police saw a black Impala with rims heading northbound on Seaford. *Id.* at 12. Police stopped the car and, inside, found and photographed three men, a bag of money, three firearms, two ski masks, and a pair of gloves. *Id.* at 84, 89–92.

Police arrested the three men and placed each in the back of separate police cars to keep them from communicating with one another. (D.E. 16-6 at 86.) Police drove all three men back to the

scene. *Id.* at 134–35. One at a time, officers had each man step out of a police car and asked the complaining witness if he recognized any of the men. *Id.* at 96. The witness identified Hollins as the suspect that robbed him. *Id.*

## A. Pretrial

A grand jury indicted Hollins for aggravated robbery with a deadly weapon on March 4, 2011. (D.E. 16-2 at 18.) The grand jury re-indicted him on March 28, 2012, adding two prior felony convictions as sentencing enhancements. *Id.* at 10.

Defense counsel filed a motion to suppress all evidence seized at the time of Hollins's arrest. (D.E. 16-2 at 164.) He argued that the officers lacked probable cause to arrest him and that the warrantless search and seizure violated the Fourth Amendment. *Id.* At the motion hearing, Officer Brett Graham testified that he stopped the Impala because it matched the witness's description of the car and its location and was found within seconds of the witness's tip. (D.E. 16-6 at 21.) He also testified that he watched as the car failed to stop at a stop sign, turned without the use of blinkers, and reversed in an intersection. *Id.* at 21–22. He testified that those traffic violations were all arrestable offenses. *Id.* at 22. The court denied the motion to suppress. *Id.* at 27.

Defense counsel also filed a motion for a psychiatric examination. (D.E. 16-2 at 66.) The court granted the motion. *Id.* at 67. Dr. Ramon Laval conducted a competency evaluation and opined that Hollins was competent to stand trial. *Id.* at 106.

## B. Guilt/innocence phase of trial

Over two days, the jury heard testimony from the complaining witness and several police officers, including Officer Graham. (D.E. 16-2 at 270.) Although Officer Graham testified that he saw three ski masks and two pairs of gloves in the Impala when Hollins was arrested, the State only offered two ski masks and one pair of gloves into evidence. (D.E. 16-6 at 91–92; D.E. 16-10 at 34, 68.) On

cross-examination, defense counsel challenged the officer's testimony and Officer Graham acknowledged that police only photographed two ski masks and one pair of gloves. (D.E. 16-6 at 102–16.) Officer Graham admitted that he may have misremembered what he saw at the scene. *Id.* at 109. The jury deliberated for one hour and returned with a guilty verdict. (D.E. 16-2 at 230, 270.)

### C. Punishment phase of trial

During the sentencing phase, defense counsel called Hollins's mother to the stand as a character witness. (D.E. 16-9 at 8.) After the State asked about Hollins's tattoos, his mother testified that both Hollins and her younger son, who had never been in trouble, have teardrop tattoos. *Id.* at 23. She also testified that she believed they got the teardrop tattoos for their late grandmother. *Id.* Before the State could finish asking a follow up question, defense counsel, anticipating that the prosecutor was trying to tie the teardrops to Hollins's criminal record, objected because the question called for speculation and would cause unfair prejudice. *Id.* at 24. The court sustained the objection. *Id.*

The defense offered into evidence a list of Hollins's psychiatric medications. (D.E. 16-9 at 14–15.) The list, supplied by Harris County, showed Hollins's court date, case number, and charge number, with Hollins's alias, "James Earl Smith." (D.E. 16-10 at 105.) During deliberations, the jury asked the court to confirm that the list related to Hollins, given that it was "[n]ot his name on the paper." (D.E. 16-2 at 233.) Following a discussion with counsel for both sides, the court wrote the jury back stating: "Yes. Refer to the case numbers and refer to the charge." (D.E. 16-9 at 55–58.)

The court arraigned Hollins on the two recidivist enhancements. (D.E. 16-8 at 4–6.) Enhancement Paragraph One alleged that Hollins was convicted of aggravated assault in the 351st District Court of Harris County, Texas, on August 3, 1994. *Id.* at 5. Enhancement Paragraph Two alleged that Hollins was convicted of

carjacking in the United States District Court for the Southern District of Texas on January 25, 2001. *Id.* Hollins pleaded "not true" to both enhancements. *Id.* at 6. Documentation of the convictions was entered into evidence in penitentiary packets. *Id.* at 12.

The court instructed the jury to review the evidence and decide whether it believed the enhancement allegations were true beyond a reasonable doubt. (D.E. 16-2 at 234–35.) The court told the jurors that if they found both enhancement paragraphs to be true, they should assess punishment at confinement "for not less than twenty-five years nor more than ninety-nine years, or life." *Id.* at 235. If they found only one enhancement paragraph to be true, they were to assess punishment at confinement "for not less than fifteen years nor more than ninety-nine years, or life." *Id.* at 235–36. The jury found both enhancements to be true and assessed punishment at confinement for life. *Id.* at 241. The court sentenced Hollins accordingly. *Id.* at 248.

### D. Post-Trial Proceedings

Hollins appealed the trial court's judgment. (D.E. 16-2 at 254.) The Court of Appeals for the First District of Texas affirmed the judgment. (D.E. 16-13.) Hollins filed a petition for discretionary review, which the Texas Court of Criminal Appeals refused. (D.E. 16-1, 16-14, 16-21.)

Hollins filed a state petition for habeas corpus. (D.E. 16-41.) The state trial court issued findings of fact and conclusions of law. (D.E. 16-39 at 15–36.) The Texas Court of Criminal Appeals denied the state habeas petition without written order. (D.E. 16-34.)

Hollins filed his federal petition for writ of habeas corpus under 28 U.S.C. § 2254 on November 20, 2019. (D.E. 1.) He argues that both his trial lawyer and appellate lawyer were ineffective and prejudiced his defense. Lumpkin moves for summary judgment. (D.E. 17.)

2. *Standard of Review for § 2254 Cases*

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal writ of habeas corpus is available for "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The court cannot grant habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court[,]" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The state court's factual findings are presumed correct, and the applicant bears the burden to overcome that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." *Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (quoting *Goodwin v. Johnson*, 132 F.3d 162, 184 (5th Cir. 1997)). AEDPA requires the court to defer to the state habeas court's express and implicit findings of fact and conclusions of law. *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004).

Where, as here, the highest state court denies a habeas petition without accompanying reasons, the court "looks through" to the last reasoned state-court decision on the merits and gives a rebuttable presumption that the higher state court denied the petition in reliance of the lower court's reasoned opinion. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *see Langley v. Prince*, 926 F.3d 145, 159 (5th Cir. 2019) (applying *Sellers* to defer to the state appellate court's findings). Thus, in the analysis below, the court presumes that the Texas Court

of Criminal Appeals denied Hollins habeas relief based on the trial court's findings of fact and conclusions of law.

### 3.  Ineffective assistance of counsel

#### A.  Legal standard

Ineffective assistance of counsel claims are reviewed to determine whether counsel's performance was both objectively deficient and actually prejudicial to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Gipson*, 985 F.2d 212, 215 (5th Cir. 1993). If the petitioner makes an insufficient showing on one of the components of the inquiry, the court need not address the other. *Strickland*, 466 U.S. at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010); *Mejia v. Davis*, 906 F.3d 307, 315 (5th Cir. 2018). It is "all the more difficult" where, as here, a defendant challenges a merits denial of his *Strickland* claim under AEDPA. *Harrington v. Richter*, 562 U.S. 86, 105 (2011); *Mejia*, 906 F.3d at 315. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105; *Mejia*, 906 F.3d at 315 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

##### i.  Deficient Performance

Deficient performance means that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In reviewing counsel's performance, courts must "be highly deferential," eliminate the "distorting effects of hindsight," and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

"Defense counsel's strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Mejia*, 906 F.3d at 316 (internal citations omitted). "A court reviewing those choices is required not simply to

give counsel the benefit of the doubt, but to affirmatively entertain the range of possible reasons he may have had for proceeding as he did." *Id.* (internal citations omitted). The Fifth Circuit has "explained that counsel is afforded particular leeway where a potential strategy carries double-edged consequences." *Id.* (internal citations omitted). "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Harrington*, 562 U.S. at 105; *Mejia*, 906 F.3d at 317. "It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'" *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690).

> ## ii.   *Prejudice*

Under *Strickland*, prejudice is "a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. It is not enough to show that errors had "some conceivable effect" on the outcome; rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. A court assessing prejudice "must consider the totality of the evidence before the judge or jury," because "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 695–96.

> ## B.  *Analysis*

> ### i.   *Failure to request a ruling following the pretrial competency examination*

Hollins argues that his trial counsel failed to request a ruling on competency during trial. He asserts that the pretrial motion for a psychiatric examination was never resolved. According to Hollins,

had his attorney sought a ruling, the trial court would have found Hollins to be incompetent to stand trial.

Hollins's premise is incorrect. The court granted the motion for a competency evaluation the same day that it was filed. (D.E. 16-2 at 67.) Dr. Laval performed the evaluation and found that Hollins was competent to stand trial. *Id.* at 106.

Under Texas law, defendants are "presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." Tex. Crim. Proc. Code Ann. art. 46B.003(b). The state habeas court determined that there was not "sufficient evidence to rebut the presumption that [Hollins] was competent to stand trial." (D.E. 16-39 at 21 ¶ 45.)

 "There can be no deficiency in failing to request a competency hearing when there is no evidence of incompetency." *Gonzales v. Davis*, 924 F.3d 236, 247 (5th Cir. 2019) (quoting *McCoy v. Lynaugh*, 874 F.2d 954, 964 (5th Cir. 1989)); *see Roberts v. Dretke*, 381 F.3d 491, 499 (5th Cir. 2004) (determining no deficiency in trial performance where there was no evidence that further investigation into competency was necessary). Hollins has not presented any facts that show he was incompetent to stand trial. Counsel's performance is not constitutionally deficient for failing to raise a meritless issue. *See Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007).

Hollins also argues that his appellate attorney was deficient for not furthering this issue on direct appeal. For the same reasons that trial counsel was not ineffective for failing to file a motion, appellate counsel was not ineffective for failing to pursue the issue on appeal.

### ii.   *Failure to object under the Confrontation Clause*

At trial, Officer Graham testified about the eyewitness's description of the fleeing vehicle. Hollins argues that his lawyer should have objected to Officer Graham's testimony under the Confrontation Clause because the testimony described the statement of a non-testifying witness. Because that statement led police to

8

suspect and search the Impala, Hollins asserts that he had a right to confront the witness in court.

The state habeas court determined that Hollins did not "demonstrate that the court would have committed error in overruling a defense objection to Officer Graham's testimony." (D.E. 16-39 at 32 ¶ 5.) The court reasoned that the Confrontation Clause was not triggered because "Officer Graham did not testify to any statements that the [witness] actually made." *Id.*

Although this court does not agree with the state habeas court's reasoning (that there was no Confrontation Clause violation because the officer did not repeat the witness's statements), the court concludes that the state habeas court's ultimate conclusion (that counsel was not deficient for failing to object) is sound.

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." It can apply to an officer's testimony even if the officer did not repeat the exact statements made to them if the nature of the statements can reasonably lead the jury to infer a defendant's guilt. *United States v. Kizzee*, 877 F.3d 650, 657 (5th Cir. 2017). The fact that the officer did not repeat verbatim the witness's statements is not dispositive of the issue.

However, the Confrontation Clause applies only to "testimonial" statements where "the primary purpose of the conversation was to create an out-of-court substitute for trial testimony." *Ohio v. Clark*, 576 U.S. 237, 245 (2015) (quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)). Statements by witnesses to police describing events as they are happening or to resolve an ongoing emergency, such as a 911 call, are not testimonial. *Davis v. Washington*, 547 U.S. 813, 827 (2006). Officer Graham testified that a witness "flagged [officers] down" at the scene of an aggravated robbery and told officers what she saw just moments before. (D.E. 16-6 at 69–75.) The purpose of the witness's statement

9

was to assist police in locating the armed suspects among the general public. The witness's statements were not testimonial and the officer's repetition of those statements in court did not violate the Confrontation Clause. Hollins has failed to show that the state habeas court's conclusion—that counsel was not deficient for failing to object under the Confrontation Clause—was an unreasonable application of federal law.

### iii. Failure to object to officer's testimony about what he saw in the car

Hollins argues that his lawyer was ineffective for failing to object when the arresting officer testified about objects he saw in the car that were not admitted into evidence or otherwise in police custody. Hollins asserts that, because the State only presented two ski masks and one pair of gloves found in the Impala, the jury should have been instructed to disregard testimonial evidence of a third ski mask and second pair of gloves.

The state habeas court determined that Hollins failed to show that trial counsel was deficient because he "extensively cross-examined Officer Graham about the lack of physical evidence to support his testimony that a third ski mask was found at [Hollins's] feet." (D.E. 16-39 at 32 ¶ 6, 24 ¶ 70.)

There is no rule that an officer's testimony must be accompanied by physical evidence. Police officers are permitted to testify about things they observe in the course of their duties. *Osburn v. State*, 92 S.W.3d 531, 536–37 (Tex. Crim. App. 2002). Any objection to the officer's testimony on the ground that the officer's observations were not corroborated by physical evidence admitted into evidence would have been, and should have been, overruled.

Defense counsel did the only thing he could have done. That is, he cross-examined the officer vigorously. That cross-examination led Officer Graham to admit that police photographs and reports did not support his testimony. (D.E. 16-6 at 106–09.) Hollins does not explain

10

what else defense counsel could have done. He has not shown that the state habeas court's determination was unreasonable.

### iv.   *Failure to object to testimony about Hollins's tattoos*

Hollins argues that his trial counsel should have objected to the State's examination of his mother about his tattoos. He asserts that the State used Hollins's tattoos "to inflame the jury and prejudice [Hollins] in order to obtain a more severe sentence by showing [his] character conformed to that of a criminal." (D.E. 18 at 4.)

The state habeas court determined that Hollins "fail[ed] to demonstrate how he was harmed by the State's mention of the tattoos on his face in light of the additional punishment evidence the State offered into evidence including the evidence that he had been convicted of both federal and state felonies." (D.E. 16-39 at 33 ¶ 7.)

Hollins has not shown deficient performance because his trial counsel did object. When the State began to ask Hollins's mother about the meaning of his teardrop tattoo, defense counsel objected before the prosecutor could complete the question. (D.E. 16-9 at 24.) The court sustained the objection and Hollins's mother was excused. *Id.* at 24–25. Hollins has not shown that his counsel's conduct was deficient.

Further, Hollins has not shown that the mention of his teardrop tattoos influenced the jury. To the extent that the jury concluded that the teardrops implied that Hollins had a criminal history, evidence of Hollins's past convictions was properly admitted for the jury's consideration. (D.E. 16-10 at 69–99.) The jury knew that Hollins had prior convictions. Hollins has not shown that the state habeas court's conclusion was unreasonable.

### v.   *Failure to ensure the clarity of medical records*

Hollins argues that, before presenting the list of his medications into evidence, his trial counsel should have ensured that the records clearly identified his name. Hollins asserts that because the records

stated his alias, James Earl Smith, the jury was confused and disregarded the evidence all together.

The state habeas court determined that Hollins failed to show deficient conduct. (D.E. 16-39 at 32 ¶ 2.) According to the state habeas court, Hollins's claim that his attorney "failed to ensure that the jury understood the medical records . . . [was] unsupported by the record." *Id.* at 26 ¶ 85.

When the jury asked the court to confirm that the records belonged to Hollins, the court answered: "Yes. Refer to the case numbers and refer to the charge." (D.E. 16-9 at 58.) The instruction cleared up any confusion. Hollins has not shown that the court's instruction was insufficient or that it caused harm. Thus, Hollins does not present any facts to show that the state habeas court's finding was unreasonable.

### vi.   Failure to object to Enhancement Paragraph One

Hollins argues that his trial counsel should have objected to the State's use of Enhancement Paragraph One because the underlying conviction was void for jurisdictional and constitutional defects and because he was actually innocent of the prior offense. Specifically, he alleges: (1) the state trial court lacked jurisdiction because the indictment originated in a different district court and no criminal complaint was filed; (2) the conviction was constitutionally defective because Hollins was not issued statutory warnings; (3) he was convicted in violation of the Double Jeopardy clause; and (4) he is actually innocent of the underlying charge.

The state habeas court did not address Hollins's specific complaints about his prior conviction. Instead, it noted that defense counsel did not object to the admission of the penitentiary packet and that Hollins "fail[ed] to demonstrate that the trial court would have committed error by overruling an objection to the admission of [the] packet." (D.E. 16-39 at 26 ¶¶ 87, 89.)

Prior convictions used for sentence enhancement are presumed valid. *Sones v. Hargett*, 61 F.3d 410, 420 n.19 (5th Cir. 1995) (citing *Parke v. Raley*, 506 U.S. 20, 21 (1992)). Official records are "entitled to a presumption of regularity and are accorded great evidentiary weight." *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985) (citing *Webster v. Estelle*, 505 F.2d 926 (5th Cir. 1974)).

The penitentiary packet included official court records identifying Hollins as the individual who pleaded guilty to aggravated assault in 1994. (D.E. 16-10 at 70–82.) Hollins does not point to any defects on the face of the penitentiary packet that would place counsel on notice that further investigation was required. He provides no evidence to show that his counsel erred by affording these documents the presumptions of regularity and validity. He does not say that he notified his lawyer of any of the deficiencies he now alleges.

Hollins also does not provide any facts to support his conclusory assertions. He does not explain why the district court that convicted him did not have jurisdiction. *See Hernandez v. State*, 327 S.W.3d 200, 204–05 (Tex. App.—San Antonio 2010, pet. ref'd) ("A case assigned to a district court other than the district court to which the grand jury presented the indictment amounts only to a procedural irregularity, not a jurisdictional defect."). Although he says he was not given his statutory warnings when he pleaded guilty, the judgment of conviction says otherwise. It shows that the court admonished Hollins of the statutory warnings outlined in Article 26.13 of the Texas Code of Criminal Procedure on August 3, 1994. (D.E. 16-10 at 74–80.) Hollins makes no effort to explain how the Double Jeopardy clause applied to his prior conviction. He makes no argument about actual innocence. His allegations alone are not enough. *See Parke*, 506 U.S. at 31 ("[E]ven when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant.").

Hollins has not shown that his trial counsel's performance was defective or prejudicial. The state habeas court's conclusion on this issue was not unreasonable.

### vii.   Failure to investigate facts and witnesses

At trial, an eyewitness testified that during the robbery he noticed that one of the robbers wore eyeglasses. (D.E. 16-6 at 179, 187.) He also testified that he identified Hollins, who wears eyeglasses, as a suspect. *Id.* at 193. Hollins appears to believe that the eyewitness identified him as the robber solely because he wears eyeglasses. He asserts that other eyewitnesses made statements that did not mention any suspect wearing eyeglasses. He argues that his trial attorney should have sought out the alleged witnesses to testify on behalf of the defense because, had they testified, their testimony would have directly contradicted the State's eyewitness's testimony.

The state habeas court determined that Hollins failed to show "what further investigative efforts . . . would have revealed." (D.E. 16-39 at 32 ¶ 4.) It noted that Hollins failed to show evidence of the alleged eyewitness statements outside of his own sworn allegations. *Id.* at 22 ¶ 49.

"Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981). "[T]o demonstrate the requisite *Strickland* prejudice, [a defendant] must show not only that this testimony would have been favorable, but also that the witness would have testified at trial." *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). Hollins has not shown that the alleged eyewitnesses would have been willing to testify or that their testimony would have favored his defense. He has not even shown the existence of the eyewitnesses. Hollins's assertion that some unnamed, potential witnesses could have provided a different description of the events does not rise to the level required under *Strickland*.

14

Hollins also argues that his counsel should have investigated potential biases of the State's testifying eyewitness. The state habeas court noted that Hollins did not show that the witness was actually biased. (D.E. 16-39 at 22 ¶¶ 51–52.) In his federal petition, Hollins surmises that the testifying eyewitness "could have been a past victim of a robbery, or been involved in trials where he was motivated to testify in a manner favorable to the state." (D.E. 2 at 18.) He asserts that "any bias could have motivated the witness to testify." *Id.* Hollins does not show that the eyewitness was actually biased. His speculation does not warrant habeas relief.

### viii.   *Appellate counsel's failure to challenge suppression ruling*

Hollins argues that the trial court should have suppressed evidence seized from the Impala. He asserts that if his appellate counsel appealed the ruling, the trial court's ruling would have been reversed, evidence garnered from the stop would have been excluded, and his conviction would have been reversed.

The state habeas court determined that Hollins "fail[ed] to demonstrate that [his appellate counsel's] decision to not challenge the [] search and seizure was objectively unreasonable, and that but for this failure, there [was] a reasonable probability that [Hollins] would have prevailed on appeal." (D.E. 16-39 at 33 ¶ 7.)

Investigative stops are permitted if an officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California*, 572 U.S. 393, 396 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). During an investigative stop, officers may search an automobile for weapons if they believe that the suspect has weapons and is dangerous, based on "specific and articulable facts" and rational inferences. *Michigan v. Long*, 463 U.S. 1032, 1049–50 (1983). Officers may seize suspicious items found during a lawful search. *Texas v. Brown*, 460 U.S. 730, 739 (1983) (collecting cases);

15

*see Colorado v. Bannister*, 449 U.S. 1, 3–4 (1980) (finding probable cause for a warrantless search and seizure where an officer saw suspicious items inside a car that he lawfully stopped and subsequently searched the car and seized the items).

The trial court held a hearing on the defense's motion to suppress the evidence found in the Impala. At that hearing, Officer Graham testified that officers' initial search was based on specific facts that described the car, the location, and the time, which led them to suspect the Impala as the vehicle in question. (D.E. 16-6 at 11–13, 17, 21.) He also testified that officers witnessed the Impala make several traffic violations, giving officers further reasonable suspicion to stop it. *Id.* at 21–22. Based on the information learned at the scene and from the initial distress call, police believed there may have been guns in the car. *Id.* at 83. Because the driver refused to get out of the car, police had to physically remove him. *Id.* at 13. Police searched the car and found guns, ski masks, and black gloves. *Id.* at 22. The trial court denied the motion to suppress.

Hollins does not dispute these facts. He does not show that the trial court erred in denying the motion to suppress. It appears to the court that the motion was decided correctly at the trial court level. Hollins has provided no reason to believe that the court of appeals would have decided the issue differently. Appellate counsel was not required to raise meritless issues. *Wood*, 503 F.3d at 413. Thus, Hollins's appellate counsel was not deficient for not raising the trial court's suppression ruling.

### ix.   *Appellate counsel's failure to argue that Hollins's arrest was unlawful*

Hollins acknowledges that his appellate attorney argued on appeal that his show-up identification was unconstitutional and that his custodial statement should have been suppressed. He argues that counsel should have raised the further issue that both the identification and the custodial statement stemmed from an illegal

16

arrest. The state habeas court determined that Hollins failed to show that his appeal would have been successful had his appellate attorney made the additional argument as to either issue. (D.E. 16-39 at 33 ¶ 9, 34 ¶ 11.)

Hollins has not shown that his arrest was illegal. Officer Graham testified that, based on the facts known at the time, he suspected that the occupants of the Impala, including Hollins, had robbed the Auto Zone. (D.E. 16-6 at 21, 83.) Hollins has not shown that Officer Graham's suspicion was unreasonable. *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed . . . [based] upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."). Because Hollins has not shown that the arrest was unlawful, he has failed to show that his appellate counsel would have been successful on appeal had she raised the issue. *See Wood*, 503 F.3d at 413.

Hollins has not met his burden under *Strickland*. Habeas relief should be denied.

### 4. Conclusion

The court recommends that Lumpkin's motion (D.E. 17) be granted and Hollins's petition be denied with prejudice. Hollins has not met his threshold burden of demonstrating that the state habeas court's denial of these claims constituted an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d). Hollins has not made a substantial showing that he was denied a constitutional right or that it is debatable whether this court is correct in its ruling. Therefore, the undersigned recommends that a certificate of appealability not be issued. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

17

The parties have fourteen days from service of this report and recommendation to file written objections. *See* Rule 8(b) of the Rules Governing Section 2254 Cases; 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on December 3, 2020.

_____
Peter Bray
United States Magistrate Judge

18